# UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF TENNESSEE
### AT KNOXVILLE

CITY BONDING COMPANY, INC.,    )
    )
       Plaintiff,    )
    )
v.    )    NO.:  3:05-CV-90
    )          (VARLAN/SHIRLEY)
ROBERT L. HAUTHER and BARBARA    )
W. HAUTHER, d/b/a CITY & COUNTY    )
BAIL BONDING CO.,    )
    )
       Defendants.    )

## MEMORANDUM OPINION

This civil action is before the Court on the plaintiff's Motion for Preliminary Injunction [Doc. 5]. Plaintiff City Bonding Company, Inc. requests a preliminary injunction enjoining the defendants, Robert L. and Barbara W. Hauther d/b/a City & County Bail Bonding Company, from engaging in unfair competition in violation of section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a).[1] Plaintiff contends that defendants are engaged in unfair competition by using a trade name that is confusingly similar to City Bonding and by misrepresenting themselves to be agents of City Bonding. The defendants argue that plaintiff

---

[1]It is worth noting at the outset that plaintiff's complaint asserts six causes of action: (1) federal unfair competition in violation of the Lanham Act; (2) federal dilution in violation of the Lanham Act; (3) trade name infringement and unfair competition in violation of the Tennessee Trade Mark Act; (4) dilution in violation of Tennessee common law; (5) unfair and deceptive trade practices in violation of the Tennessee Consumer Protection Act; and (6) common law property damage. [Doc. 1.] The pending motion relates solely to the unfair competition claim under the Lanham Act.

has not met the requirements for issuance of a preliminary injunction. The Court has carefully reviewed the parties' pleadings, including the witness declarations, and considered the testimony and exhibits presented on March 11 and 18, 2005 [Docs. 6, 10, 11, 28, 30, 34, 36, 39, 42, 43, 44].

For the reasons set forth herein, the Court finds that plaintiff's motion for preliminary injunction is well-taken and it will be **GRANTED**.

## I.    Relevant Facts

### A.    Background

Plaintiff City Bonding Company, Inc. ("City Bonding") is a Tennessee corporation with a principal office in Sevier County, Tennessee. City Bonding is a professional bonding company that operates under the name "City Bonding" or, as several witnesses testified, "City." City Bonding provides professional bonding services such as the furnishing of bail, making bonds, and other undertakings as surety in criminal proceedings.[2] City Bonding is licensed to issue bonds in 38 counties in Tennessee and Virginia and nationwide through the federal courts. Dan Gibbs is the President of City Bonding and has been associated with City Bonding since 1981. Mr. Gibbs testified that he has been engaged in the bail bonding

---

[2]A "professional bondsman" is defined by Tennessee law as "any person, firm, partnership or corporation, engaged for profit in the business of furnishing bail, making bonds or entering into undertakings, as surety, in criminal proceedings, or for the appearance of persons charged with any criminal offense or violation of law or ordinance punishable by fine, imprisonment and/or death, before any of the courts of this state, including municipal courts, and/or securing the payment of fines, judgments and/or damages imposed and of costs assessed by such courts upon preliminary or final disposition thereof." Tenn. Code Ann. § 40-11-301(a)(4)(A).

business for 35 years. Mr. Gibbs purchased City Bonding and built the business up over the years. City Bonding now employs 16 bonding agents.

Robert and Barbara Hauther, husband and wife, started their bail bonding business on or about September 1, 2004, in Sevier County, Tennessee. Defendants have used the business names "City & County Bonding Co." and "City & County Bail Bonding Co." The defendants started their business as sole proprietors and incorporated the business as "City & County Bail Bonding, Inc." in the State of Tennessee on March 1, 2005. [Def. Ex. 6.] The defendants provide professional bonding services in 14 counties in East Tennessee, primarily in Sevier, Grainger, Anderson, Hamblen, Jefferson, Union, and Cocke Counties. Mrs. Hauther worked for East Tennessee Bonding Company for approximately 12 to 18 months prior to starting City & County Bail Bonding with her husband. Mr. Hauther testified that he worked in the bail bonding business for approximately 6 months prior to starting his own business.

B. Company Names

Mr. Gibbs testified that the emphasis in his company's trade name, "City Bonding," is on the word "City." As he put it, people will say "City made" John Doe's bond. [Doc. 36 at p. 73.] The witnesses almost uniformly testified that the words "City Bonding" or "City" refer to Mr. Gibbs' bonding company, including the defendants. [Doc. 36 at pp. 17, 57, 154, 179, 186.] As Mr. Humphreys testified, "when people say City – I have been in it almost 30 years. City was always Dan Gibbs, always has been around Knoxville." [Doc. 36 at p. 19.]

3

The record reflects that defendants received approval from the Circuit Court for Sevier County to write bail bonds in the Fourth Judicial District of Tennessee (Cocke, Grainger, Jefferson and Sevier Counties) under the name "City & County Bonding Co." on September 1, 2004. The defendants requested and received an amended order entered October 28, 2004 to operate as "City & County Bail Bonding Co." The defendants testified that this name change was merely a correction and that they always intended to do business as "City & County Bail Bonding Co." and the original court order approving their operation as "City & County Bonding Co." was an administrative error. Plaintiff notes that this name change occurred after counsel for the plaintiff sent the defendants a letter advising them of their use of an infringing trade name and demanding that they cease using that name. [*See* Pl. Ex. 5.] Mrs. Hauther testified that they chose the name City & County Bail Bonding because they live outside the city and the city line keeps moving closer to their home, not for any intent to copy the plaintiff's name. "We said one day we're just going to have the city and county line right on our driveway. That is how we came up with the name." [Doc. 36 at p. 129.]

Murlin Foister, a supervisor with the Jefferson County Jail, was questioned regarding the similarity between the names City Bonding and City & County Bonding Company. He responded, "[w]ell, you would think they were, I guess, partners maybe." [Doc. 36 at p. 38.]

There was also testimony of several bonding companies in Sevier County whose names begin with the letter "A" – such as AA, A1 Ace, A+, All American. [Doc. 36 at p. 56.] The intent of using such names is presumably to be at the beginning of the phone book

listing. Mr. Gibbs expressed his opinion that "there is so many A bonding companies it doesn't mean anything. There is one City Bonding Company." [Doc. 36 at p. 88.]

C.     Selection of a Bonding Company

The parties' clients are individuals facing criminal charges. Mr. Gibbs noted they include persons who have "stubbed their toe and got arrested for DUIs" as well as "hardened criminals." [Doc. 36 at p. 79.] It is undisputed that the parties offer the same services to the same pool of potential customers.

It appears that many of the county jails in which the parties do business have a board or display area with the names and phone numbers of local bonding companies. It is worth noting that the bonding company listings do not identify a bonding agent, only the name and phone number of the bonding company. The board is usually located in an area accessed by inmates who are trying to select a bonding company. The record also contains evidence that the names of the bonding companies are rotated periodically so that they all have an equal opportunity to obtain the inmates' business.[3] Officers at the jails are not permitted to recommend or otherwise refer a particular bonding company over another and no other displays or advertisements are permitted in the jails.

The Court heard testimony that inmates are often motivated to select a bonding company who is closest to the jail. [Doc. 36 at p. 57.] The testimony also reflects that

---

[3]As Murlin Foister, a supervisor in the Jefferson County jail, testified, the signs are rotated so that every bonding company has the same opportunity to be the listing closest to the phone. [Doc. 36 at p. 39.]

inmates frequently use the same bonding agent or bonding company over and over until the company refuses to extend them further credit. Inmates often remember the individual bonding agent, rather than the bonding company's name. Many inmates are illiterate or intoxicated and cannot read the numbers of the bonding companies at the jails. Other inmates may be sober and able to distinguish the bonding company names. As Mr. Gibbs described it, "Bob Ritchie will call and say, Dan, I have a client in my office. Will you meet me at the jail or someone at the jail and that guy is stone sober and educated and coherent and we'll walk out there and he'll know exactly what is going on. Then you will have maybe somebody that is half drunk and been arrested for DUI or whatever come in, and you know, just really just looks for City." [Doc. 36 at p. 121.]

D. <u>Reputation</u>

Mr. Gibbs testified in detail as to his efforts to build the reputation of City Bonding by being honest with courts and clients and providing service throughout the court proceedings. Mr. Gibbs noted that a bonding company not only has to post bonds at the jail, but must also ensure that a defendant appears at every court date. His company takes defendants to court and puts them in contact with their probation officer. He has a bonding agent in Knoxville that speaks Spanish and assists Hispanic defendants. This agent will assist defendants in obtaining a driver's license and interpreting for them. Mrs. Hauther likewise testified that they call their defendants to remind them of a court date and, if necessary, give them a ride to court. If the defendant does not show up for court, the bonding company becomes liable for the whole bond.

E.    Marketing Efforts

City Bonding's office in Sevierville, Tennessee is next to the Sevier County jail and across the street from the courthouse.  As Mr. Gibbs noted, the location is convenient because people leaving the courthouse to make a bond have to walk past his office.  Similarly, prisoners going from the jail to the courthouse pass his office.  [Doc. 36 at p. 74.]  The record contains photographs of the front door of City Bonding Company's office in Sevierville, a sign advertising City Bonding on a brick wall next to his office, and the City Bonding sign on the street in front of the office.  [Pl. Ex. 2.]  City Bonding also markets its services by placing newspaper advertisements, telephone book advertisements, sponsoring little league baseball teams, and purchasing hats, pens, matches, and t-shirts with the City Bonding logo on them.  [Doc. 36 at p. 77, 78; Pl. Ex. 3, 4.]  Mr. Gibbs stated that his agents wear t-shirts, caps, or sport jackets with the City Bonding logo when they are doing company business.  [Doc. 36 at p. 79.]

The telephone books for Sevier County and Campbell County, Tennessee were introduced as exhibits.  [Pl. Exs. 6, 7.]  The Sevier County yellow page advertisements for bonding companies include a modest listing for City Bonding which is approximately one inch high and a half-page advertisement for City & County Bail Bonding on a subsequent page.  [Pl. Ex. 6 at pp. 51, 53.]  The City Bonding Company listing contains the business name, address, and phone numbers and the phrases "24 Hour Service" and "Bonds to All Courts."  The City & County Bail Bonding advertisement includes an interlocking "CC" logo

7

and a picture of a person's hands on jail cell bars.[4]  The City & County Bail Bonding

advertisement also states, "24 Hour Fast Service," "Freedom is Just a Call Away," "Prompt,

Professional, Confidential," and "No Bond Too Large or Small."  Mrs. Hauther stated that

they spend approximately $7,200 per year for their yellow page advertisement in the Sevier

County phone book.  She estimates they spend a total of $8,500 to $10,000 per year on

advertising.  She believes this amount of advertising expense is necessary because "there is

a lot of bonding companies."  [Doc. 36 at p. 128.]

In the Campbell County phone book, the yellow page advertisements contain a one-

half inch listing for City Bonding Company in black type, followed by a one-half inch listing

for City & County Bail Bonding in red type and a one-quarter page advertisement for City

& County Bail Bonding, all on the same page.  The City & County Bail Bonding

advertisement also contains the "CC" logo and a small picture of a person's hands on jail cell

bars.  [Pl. Ex. 7.]  It is worth noting that City & County Bail Bonding is the next alphabetical

listing after the City Bonding Company listing in both phone books.  Mr. Gibbs testified that

City Bonding no longer needs to place large ads in the phone book due to their many years

in business.  After conducting a survey of his clients, he concluded that they heard of City

---

[4]The Court heard testimony that a bonding company in Cocke County, Clevenger & Clevenger, use a "C&C" logo in their business.  The plaintiff presented a photograph of advertisement for C&C Bonding in Newport, Tennessee.  [Pl. Ex. 8.]  Mrs. Hauther testified that she came up with the "CC" logo as something to put in the center of their business cards.  [Doc. 36 at p. 127.]  She further testified that she was not aware of Clevenger & Clevenger using the logo "C&C" in their advertising.  *Id.*  Mr. Hauther admitted that he has heard Clevenger & Clevenger referred to as "C&C."  *Id.* at 180.

Bonding through word of mouth rather than through a listing in the phone book. [Doc. 36 at p. 88.]

The defendants introduced the business cards of City Bonding and City & County Bail Bonding respectively [Def. Exs. 4, 5]. The City Bonding card features the name "City Bonding Co., Inc." and address and telephone information on a green, red, and black background. [Def. Ex. 4.] The City & County Bail Bonding card features the name "City & County Bail Bonding" and the "CC" logo in red letters on a white background. [Def. Ex. 5.] However, as Mr. Gibbs noted, inmates in the jails do not see advertisements or business cards until after they have already selected a bonding company. [Doc. 36 at p. 111.]

F.    Incidents of Confusion

    1.    Dan Gibbs

Mr. Gibbs testified that he was contacted by the Sheriff's Department of Hamblen County to remove a sign in the jail with the wrong phone number on it. Mr. Gibbs investigated and discovered that City Bonding's sign had not been changed, but that City & County Bail Bonding's sign had a mistake and had to be changed. [Doc. 36 at p. 85.]

Mr. Gibbs also testified that in the fall of 2004 a lady came to his office asking for information about her bond. When he could find no information about her bond, she stated that a man bonded her out and she described Mr. Hauther. [Doc. 36 at pp. 89-90.]

Similarly, Mr. Gibbs testified that someone approached one of his agents requesting reimbursement for $50 for an alleged bad check fee from her boss that was not actually incurred. The individual then described Mr. Hauther as the boss. [Doc. 36 at pp. 91-92.]

9

Finally, Mr. Gibbs testified that the Sevier County Jail has called his office to advise that a defendant is ready to be released on their bond, but instead City & County Bail Bonding was the bonding company. [Doc. 36 at p. 92.]

      2.    Stacie Kent

Plaintiff has submitted the declaration of Stacie D. Kent, a bonding agent for City Bonding Company in Sevier, Jefferson and Cocke Counties [Doc. 6, Attach. 1]. On or about October 2, 2004, Ms. Kent was advised by a jailer at the Sevier County Jail that he was preparing an inmate bonded by her boss. Ms. Kent went to the jail and observed Mr. Hauther writing the inmate's bond. [Kent Dec. at ¶ 5.] Ms. Kent states that the next day she overheard a conversation between Mr. Hauther and a transport officer, Bob Humphreys, at the Sevier County Jail in which Mr. Hauther was asked if he worked for Dan Gibbs. Mr. Hauther did not admit or deny any employment with City Bonding or Dan Gibbs and was wearing a polo shirt with the name "City Bonding" on it. [Kent Dec. at ¶ 6.] Mr. Humphreys testified that he did not remember any such conversation with Mr. Hauther and he has never seen Mr. Hauther wearing a "City Bonding" polo shirt. [Doc. 36 at pp. 15-16.] Mr. Hauther denied that he had ever represented himself to be Dan Gibbs or associated with City Bonding Company. [Doc. 36 at pp. 166-67.] He did, however, introduce a polo shirt with the City & County Bail Bonding logo on it. [Def. Ex. 7.]

      3.    John Estep

On or about October 17, 2004, Ms. Kent received a referral to write a bond for an inmate at the Sevier County Jail. She contacted John Estep and made arrangements to meet

10

him at the jail. When she arrived, Mr. Hauther was already writing the bond. Mr. Estep advised Ms. Kent that he had contacted directory assistance to request City Bonding's telephone number but received the Hauthers' number instead. After consulting an officer with the Sevier County Sheriff's office, Ms. Kent was allowed to write the bond. [Kent Dec. at ¶ 7.]

The record contains an audio tape recording of two phone calls recorded by Tri-Star Communications Answering Service, along with a copy of Tri-Star's communications log for calls related to East Tennessee Bonding Company. [Def. Exs. 2, 3.] The call log reflects a call received on October 23, 2004, for Barbara by John Estep for a bond for an inmate in Sevier County. [Def. Ex. 3.] At the beginning of the recorded conversation, the answering service identified itself as "Bonding Company." Mr. Estep responded that he was looking for a bonding agent he had used before and who owned a gray Neon. The answering service then contacted Mrs. Hauther upon the belief that she still worked for East Tennessee Bonding. Mrs. Hauther accepted the call and then passed the information on to her husband, who wrote the bond for Mr. Estep. The Hauthers testified that they had not previously bonded for Mr. Estep and they do not own a gray Neon. [Doc. 36 at pp. 139, 184.] Mr. Gibbs testified that Eric Patton, a bonding agent of City Bonding in Knox County, had previously bonded for Mr. Estep on two or three occasions and owns a gray Neon. [Doc. 36 at p. 80.] Mrs. Hauther testified that Mr. Estep could not have been confused by the similarity of their name with City Bonding's name because defendants had no telephone

listing or answering service as of October 24, 2004. [Doc. 36 at p. 130, 138.] Mrs. Hauther denied that she ever represented herself as being associated with City Bonding Company.

### 4. Kim Osorio

On or about November 20, 2004, Ms. Kent met Kim Osorio to post a bond at the Dandridge jail. Ms. Osorio advised her that two other family members had gone to jail that month and Ms. Kent had bonded out the first one. Ms. Osorio tried to contact Ms. Kent for the second bond and mistakenly contacted Mr. Hauther based on an advertisement for "City & County Bail Bonding" posted at the jail.[5] When Ms. Osorio called the Hauthers' number and asked for Ms. Kent, Mr. Hauther reportedly told her that Ms. Kent was sick and implied that he worked for City Bonding. [Kent Dec. at ¶ 8.]

Ms. Osorio tells a slightly different version of this incident. Prior to September 26, 2004, she was trying to get a bond for Carlos Perez and she got phone numbers for bonding companies from the jail. She called a number that began with "397" and she was trying to reach Stacie whom she had dealt with before.[6] Ms. Osorio reached an answering service and asked if they bonded Hispanics.[7] Ms. Osorio then called back and was connected with Bob Hauther. Mr. Hauther told her that he was covering for Stacie because Stacie was sick. Mr.

---

[5]Murlin Foister, supervisor with the Jefferson County Jail, testified that advertisements are not permitted to be posted in the lobby and that he has never had to remove an advertisement posted by City & County Bail Bonding. [Doc. 36 at p. 32.]

[6]Both parties have phone numbers with a "397" prefix.

[7]Mrs. Hauther testified that they did not have an answering service at this time, thus, Ms. Osorio must have called the phone number on the wall in the jail. [Doc. 36 at p. 132.]

Hauther asked how much the bond was and she replied that it was $1500. Mr. Hauther advised Ms. Osorio that he had to have $500 "hold money" to write the bond because the defendant was Hispanic.[8] After he wrote the bond for Mr. Perez, Mr. Hauther told Ms. Osorio that she would get her $500 back, less 10% at the conclusion of the case. After Mr. Perez's case was over, Ms. Osorio called Mr. Hauther and asked for the money back. Mr. Hauther replied that the $500 was bonding money and he refused to return Ms. Osorio's money. Ms. Osorio told him she was going to the Judge. Mr. Hauther said do what you have to do and hung up the phone. Ms. Osorio states that she has tried to contact Mr. Hauther and left messages with his answering service asking for him to call her back, but he has not returned her calls and he has never returned her money. [Doc. 30, Osorio Dec. at ¶¶ 2-5.] Mr. Hauther denies that he charged Ms. Ososrio $500 for a $1,500 bond. [Doc. 36 at p. 171.]

     5.   <u>Joe Lane</u>

On or about December 10, 2004, Joe Lane, a bonding and recovery agent for Eva's Bail Bonds, approached Ms. Kent regarding a bond that her "boss" had allegedly stolen from Mr. Lane in Sevier County. Because Mr. Gibbs does not write bonds in Sevier County, Ms. Kent asked Mr. Lane for a physical description of her "boss" and Mr. Lane described Mr. Hauther. Mr. Lane later told Ms. Kent that Mr. Hauther was indeed the individual who had stolen his bond. [Kent Dec. at ¶ 9; Doc. 28, Amended Dec. of J. Lane at ¶ 6.]

---

[8]Mr. Gibbs testified that bonding companies are limited by Tennessee statute to charge a fee of 10% (i.e., 10% of the bond amount) plus a $25 initiation fee and $12 tax. [Doc. 36 at p. 72.] The defendants agree that this is the customary fee charged by bonding companies.

Mr. Lane states that he was contacted to write a bond at the Sevier County Jail in early December 2004.  When he arrived at the jail, he was told that City Bonding was writing the bond.  Mr. Lane did not recognize the man writing the bond and accused him of stealing his bond.  He said, "'If you didn't work for Stacie and if I didn't like Stacie so well' I would have done something."  The man responded by leading Mr. Lane to believe that he worked with Stacie and stated, "Stacie is not working tonight."  The man did not identify himself as an agent of a bonding company that was distinct from City Bonding.  [Doc. 28, Amended Dec. of J. Lane at ¶ 5.]

6.    Terry Morton

On or about January 25, 2005, Ms. Kent was called by Terry Morton, an inmate at the Sevier County jail, who claimed that the owner of City Bonding owed him $50 on a previously written bond.  City Bonding had never written a bond for Mr. Morton.  When asked to give a physical description of the owner, Mr. Morton described Mr. Hauther.  [Kent Dec. at ¶ 10.]  The Hauthers deny that they have written a bond for Mr. Morton.  [Doc. 36 at p. 135-36, 172.]

7.    David Lane

On February 26, 2005, David H. Lane, a bail bonding agent for City Bonding in Union County, was contacted by a family member to write a bond for Jonathan Brown, who was being held in the Union County jail.  When Mr. Lane contacted the Union County jail, he was advised that someone else was already writing the bond for Mr. Brown.  [Doc. 10, D. Lane Dec. at ¶¶ 2,4.]  While Mr. Lane was at the jail on February 28, 2005, on another

14

matter, one of the deputy sheriffs asked him if he had bonded Mr. Brown. When Mr. Lane answered no, the deputy sheriff advised him that the entry in the Prisoner Clerk's Book showed that City Bonding had bonded Mr. Brown. When the deputy sheriff reviewed the actual bond for Mr. Brown, the bond reflected that City & County Bail Bonding wrote the bond for Mr. Brown. The deputy sheriff then corrected the entry in the Prisoner Clerk's Book by lining through "City Bonding" and entering City & County Bail Bonding as the bonding agent for Mr. Brown. [Lane Dec. at ¶¶ 5-7.]

8.   Connie Holt

The record also contains the declaration of Connie Holt, the General Sessions Court Clerk for Sevier County, Tennessee. In her position, Ms. Holt deals with various bonding companies providing bonds in Sevier County. She states that neither she nor her staff have encountered any confusion in the names City Bonding, Incorporated and City and County Bail Bonding. She also states that she has not observed City Bonding having name recognition or a reputation exceeding that of any other bonding company with the general public. [Doc. 34, Holt Dec. at ¶¶ 3-6.]

9.   Henry Borney

On March 31, 2005, Henry Borney called a number from the Sevier County phone book that he thought to be that of City & County Bail Bonding. He left a message with an answering service that he had put up $1,000.00 in bond money for Jennifer Phillips and that he wanted that money returned. Ms. Kent returned Mr. Borney's phone call and informed him that he had called the wrong bonding company, that she worked for City Bonding, and

they had not made this bail for him.  Mr. Borney told Ms. Kent that he was trying to contact City & County Bail Bonding, rather than City Bonding, and he had just called the first name he saw in the phone book with the name City.  [Doc. 42, Borney Dec. at ¶¶ 2-5.]

          10.   <u>Harry Montgomery</u>

Harry Montgomery, a sergeant at the Sevier County Jail, testified that he could not recall any instance of confusion by a prisoner in selecting City Bonding versus City & County Bail Bonding.  [Doc. 36 at p. 51.]

## II.    **Analysis**

The plaintiff's motion for preliminary injunction requests that defendants be enjoined from "using a trade name or mark which incorporates elements of or which are confusingly similar to the City Bonding trade name" and from "competing unfairly with City Bonding by trading off City Bonding's goodwill and business reputation, and misappropriating or diluting City Bonding's rights."  [Doc. 5.]  As explained by Mr. Gibbs, the primary issue of contention is with the defendants' use of the term "City" in their company name.  [Doc. 36 at p. 80.]  It is undisputed that the Hauthers have never worked for City Bonding or been authorized to represent themselves as an agent or representative of City Bonding.

Section 43 of the Lanham Act provides in pertinent part:

> (a)(1) Any person who, on or in connection with any goods or services, or any container for goods, uses in commerce any word, term, name, symbol, or device, or any combination thereof, or any false designation of origin, false or misleading description of fact, or false or misleading representation of fact, which –

16

> (A) is likely to cause confusion, or to cause mistake, or to deceive as to the affiliation, connection, or association of such person with another person, or as to the origin, sponsorship, or approval of his or her goods, services, or commercial activities by another person ... shall be liable in a civil action by any person who believes that he or she is or is likely to be damaged by such act.

15 U.S.C. § 1125(a)(1).  The key to liability in a false designation or unfair competition claim is whether there is a "likelihood of confusion" between the plaintiff's trade name and the defendant's trade name. *Champions Golf Club, Inc. v. The Champions Golf Club, Inc.*, 78 F.3d 1111, 1123 (6th Cir. 1996); *Wynn Oil Co. v. American Way Serv. Corp.*, 943 F.2d 595, 604 (6th Cir. 1991); *see AutoZone, Inc. v. Tandy Corp.*, 373 F.3d 786, 791-92 (6th Cir. 2004) ("The essence of a trademark or tradename infringement claim ... is 'whether the defendant's use of the disputed mark is likely to cause confusion among consumers regarding the origin of the goods offered by the parties.' ... [t]he unfair competition claim entails the same analysis") (quoting *Daddy's Junky Music Stores, Inc. v. Big Daddy's Family Music Center*, 109 F.3d 275, 280 (6th Cir. 1997)).

A preliminary injunction may issue under the Lanham Act if the moving party can show "(A) irreparable harm and (B) either (1) likelihood of success on the merits or (2) sufficiently serious questions going to the merits to make them fair ground for litigation and a balance of hardships tipping decidedly toward the party requesting the preliminary relief." *Frisch's Restaurants, Inc. v. Elby's Big Boy*, 670 F.2d 642, 651 (6th Cir. 1982).  It is worth noting that the Sixth Circuit has advised that a showing of likelihood of confusion, rather than actual deception, is all that is required to obtain injunction relief. *Frisch's Restaurants,*

17

*Inc. v. Elby's Big Boy of Steubenville, Inc.*, 670 F.2d 642, 647 (6th Cir.), *cert. denied*, 459

U.S. 916 (1982).

When evaluating the likelihood of confusion, the Court is instructed to analyze and

balance the following factors:

1.    strength of the senior mark;
2.    similarity of the marks;
3.    relatedness of the goods or services;
4.    evidence of actual confusion;
5.    marketing channels used;
6.    likely degree of purchaser care;
7.    the intent of the defendant in selecting the mark; and
8.    likelihood of expansion of the product lines.

*AutoZone, Inc.*, 373 F.3d at 792-93; *Daddy's Junky Music Stores, Inc.*, 109 F.3d at 280.  As

the Sixth Circuit has repeatedly stated,

> These factors imply no mathematical precision, but are simply a guide to help
> determine whether confusion is likely.  They are also interrelated in effect.
> Each case presents its own complex set of circumstances and not all of these
> factors may be particularly helpful in any given case. ...*The ultimate question
> remains whether relevant consumers are likely to believe that the products or
> services offered by the parties are affiliated in some way*.

*AutoZone, Inc.*, 373 F.3d at 793 (quoting *Homeowners Group, Inc. v. Home Mktg.*

*Specialists, Inc.*, 931 F.2d 1100, 1107 (6th Cir. 1991)) (emphasis added in original).  The

Court will therefore analyze the evidence in light of these factors.

A.    Strength of the Senior Mark

"The strength of a mark is a factual determination of the mark's distinctiveness.  The

more distinct a mark, the more likely is the confusion resulting from its infringement, and

therefore, the more protection it is due.  A mark is strong and distinctive when the public

18

readily accepts it as the hallmark of a particular source; such acceptance can occur when the mark is unique, when it has received intensive advertisement, or both." *AutoZone, Inc.*, 373 F.3d at 793 (quoting *Daddy's Junky Music Stores, Inc.*, 109 F.3d at 280). The stronger the mark, the greater the likelihood of confusion. *Homeowners Group, Inc.*, 931 F.2d at 1107.

It is undisputed that neither the plaintiff's trade name, City or City Bonding Company, nor the defendants' trade name, City & County Bail Bonding, are federally registered trademarks. The record reflects that plaintiff has registered the mark "City Bonding Company, Inc." with the State of Tennessee since the pendency of this case. [Doc. 43.] At present, however, the "City" mark is not entitled to a presumption of strength. *See Daddy's Junky Music Stores, Inc.*, 109 F.3d at 282.

Trademarks are generally categorized as fanciful or arbitrary, suggestive, descriptive, or generic. *AutoZone, Inc.*, 373 F.3d at 794; *Daddy's Junky Music Stores, Inc.*, 109 F.3d at 280. Despite Mr. Gibbs' testimony to the contrary [*see* Doc. 36 at pp. 98-99], the terms "City Bonding Company" or "City" are not fanciful or arbitrary, such as the marks "Exxon" or "Apple" computers, respectively. *Champions Golf Club, Inc.*, 78 F.3d at 1117. A suggestive or descriptive mark either evokes some quality of the product, such as "Easy Off" oven cleaner, or describes it directly, such as "Super Glue." *AutoZone, Inc.*, 373 F.3d at 794. A generic term is used to commonly describe the relevant type of goods or services and cannot become a trademark under any circumstances, such as "aspirin," "escalator," and "light beer." *Champions Golf Club, Inc.*, 78 F.3d at 1117. The more common a word or phrase is, the less inherent trademark strength it may have, even when the mark has an

19

arbitrary relation to the good or service to which it applies. *Daddy's Junky Music Stores, Inc.*, 109 F.3d at 281. While the term "City" as part of the trade name "City Bonding Company" does suggest that the company offers bonding services within the city, the Court concludes, on balance, that the term is generic.[9] The term "City" does not specify city in which the bonding services are offered and is contrary to the undisputed evidence that City Bonding Company offers bonding services in numerous counties throughout Tennessee and Virginia.

Although the "City" mark is generic, it is not without protection. The record reflects that City Bonding Company has been in the bonding business for more than 25 years under Dan Gibbs' management. The record also reflects that City Bonding Company has established a reputation for honesty, trustworthiness, and quality service to clients and the courts, a point that defendants do not contest. As Mr. Gibbs put it, "[i]t is the reputation that goes along with City" in the bail bonding business. [Doc. 36 at p. 99.] Moreover, the witnesses almost uniformly testified that the term "City" referred to City Bonding Company, thus indicating a strong degree of consumer recognition. Although the term "City" may be used in numerous other businesses, it appears that, prior to defendants' use of the term "City" in their business, City Bonding Company was the only bonding company in the area with the

---

[9]Although plaintiff does not expressly concede this point, a fair reading of plaintiff's post-hearing brief indicates that plaintiff acknowledges the term "City" is likely a generic mark. [*See* Doc. 44 at p. 12.]

20

term "City" in its name. Thus, on balance, the Court concludes that the City Bonding Company and City marks are relatively strong.

B.    Similarity of the Marks

The Court is instructed that the similarity of the senior and junior marks is "a factor of considerable weight." *AutoZone, Inc.*, 373 F.3d at 795; *Daddy's Junky Music Stores, Inc.*, 109 F.3d at 283. Although a side-by-side comparison of the marks is not appropriate, the Court is to consider the pronunciation, appearance, and verbal translation of the marks. *AutoZone, Inc.*, 373 F.3d at 795. "[C]ourts must determine whether a given mark would confuse the public when viewed alone, in order to account for the possibility that sufficiently similar marks may confuse consumers who do not have both marks before them but who may have a general, vague, or even hazy, impression or recollection of the other party's mark." *Id*. (quoting *Daddy's Junky Music Stores, Inc.*, 109 F.3d at 283). While plaintiff encourages the Court to focus on the use of the term "City," the Court is advised to "view marks in their entirety and focus on their overall impressions, not individual features." *AutoZone, Inc.*, 373 F.3d at 795.

The obvious similarity of the two marks at issue is that both begin with the word "City" and end with terms "Bonding Company," with the defendants' mark having the terms "& County Bail" interposed. The pronunciation of the similar parts of the marks is obviously identical. The appearance of the marks varies when viewed in phone book listings and advertisements versus the listings at the various jails. The plaintiff's business card shows its mark written in all-capital letters with a red, green, and black background, whereas the

21

defendants' business card shows its mark written in red upper and lower case letters on a white background and the interlocking "CC" logo in the middle. [Def. Exs. 4,5.] The parties' respective advertisements in the phone books are distinct inasmuch as City Bonding Company has a modest listing with only the business name, address, and phone numbers, while City & County Bail Bonding has a larger advertisement with a picture and the "CC" logo. However, the photograph of the board listing bail bonding companies at the Jefferson County Jail reveals that the companies have similar placards with only the company name and phone number; some are written in all capital letters and others are not. [Def. Ex. 1.] The photograph shows that City Bonding Company's name is written in all capital letter and City & County Bail Bonding's name is not. Both listings include a phone number with a "397" prefix.

In considering whether the defendants' mark would confuse the public, the Court takes notice that the consumers of the parties' services may often have a "vague, or even hazy, impression or recollection of the other party's mark." *AutoZone, Inc.*, 373 F.3d at 795. It is undisputed that many of the customers seeking bail bonds are intoxicated or illiterate. While repeat customers may have a stronger association with the bonding agent than the bonding company, the listings at the various jails do not identify bonding agents for each company. Thus, inmates must make their selection based on the names of the bonding companies and their recollections. As plaintiff has emphasized, the use of the term "City" at the beginning of both marks is important in this setting. On balance, the Court finds that

22

this factor weighs slightly in favor of the plaintiff and that the marks are similar enough to create a likelihood of confusion among the consumers of the parties' services.

C.    Relatedness of the Goods or Services

"The relatedness inquiry therefore focuses on whether goods or services with comparable marks that are similarly marketed and appeal to common customers are likely to lead consumers to believe that they come from the same source, or are somehow connected with or sponsored by a common company." *AutoZone, Inc.*, 373 F.3d at 797. It is undisputed that the parties compete for the same customers within a similar geographic area for the provision of professional bonding services. Thus, this factor supports the conclusion that confusion is likely.

D.    Evidence of Actual Confusion

The Sixth Circuit has repeatedly stated that "[e]vidence of actual confusion is undoubtedly the best evidence of likelihood of confusion." *AutoZone, Inc.*, 373 F.3d at 798 (quoting *Wynn Oil Co. v. Thomas*, 839 F.2d 1183, 1188 (6th Cir. 1988)). "[A]ctual confusion is weighted heavily only when there is evidence of past confusion, or perhaps, when the particular circumstances indicate such evidence should have been available." *Id*. at 798-99 (quoting *Daddy's Junky Music Stores, Inc.*, 109 F.3d at 284).

The plaintiff has presented evidence of several incidents of actual confusion. Although defendants have attempted to question the veracity of some of these incidents, it is clear that there have been occasions where a consumer has been confused by the names "City Bonding Company" and "City & County Bail Bonding," or where a consumer has

23

contacted City Bonding Company when actually trying to contact City & County Bail Bonding. Thus, on balance, this factor weighs in favor of the plaintiff.

E.    Marketing Channels Used

This factor requires the Court to consider the similarities or differences between the predominant customers of the parties' respective goods or services. *Daddy's Junky Music Stores, Inc.*, 109 F.3d at 285; *Homeowners Group*, 931 F.2d at 1110. The Court must also determine whether the marketing approaches employed by each party resemble each other. *Daddy's Junky Music Stores, Inc.*, 109 F.3d at 285.

In the present case, as noted above, the parties market their services to the same pool of customers. Moreover, both parties use similar marketing approaches, such as listings at the jails and telephone book listings, although it appears that defendants place more emphasis on the phone book listings by buying larger ads than the plaintiff. Both parties have business cards, although customers only receive those after selecting a bonding company. City Bonding Company also presented evidence of its marketing efforts by advertising in a Spanish-language newspaper, by sponsoring little league ball teams, and by purchasing hats, matches, pens, and shirts with the City Bonding Company name. Mrs. Hauther testified that defendants have advertised in the newspapers in two different counties and bought matches with their company logo. [Doc. 36 at p. 147.] City & County Bail Bonding introduced a polo shirt with the company's logo on it; however, the testimony reflects that the shirt is one that Mr. Hauther wears when performing company business. While there is evidence that City Bonding Company uses a broader spectrum of marketing mediums, the evidence on

24

balance indicates that the parties use similar marketing channels and this factor weighs slightly in favor of the plaintiff.

   F.   Likely Degree of Purchaser Care

"The degree of care with which consumers likely purchase the parties' goods or services may affect the likelihood of confusion." *Daddy's Junky Music Stores, Inc.*, 109 F.3d at 285. As explained by the Sixth Circuit,

> Generally, in assessing the likelihood of confusion to the public, the standard used by the courts is the typical buyer exercising ordinary caution. However, when a buyer has expertise or is otherwise more sophisticated with respect to the purchase of the services at issue, a higher standard is proper. Similarly, when services are expensive or unusual, the buyer can be expected to exercise greater care in her purchases. When services are sold to such buyers, other things being equal, there is less likelihood of confusion.

*Id*. (quoting *Homeowners Group*, 931 F.2d at 1111). The Sixth Circuit has also instructed that the significance of a degree of purchaser care will often depend upon its relationship to the other seven factors. *Id*. "The effect of purchaser care, although relevant, will be less significant than, or largely dependent upon, the similarity of the marks at issue." *Id*. at 286.

   The record reveals that the degree of customer care in selecting a bail bonding company is generally low. Many of the inmates are intoxicated or illiterate and therefore unable to make an informed, reasoned decision. Some inmates will select a company based on its proximity to the jail. Other customers, however, may be sober, educated, and completely aware of what is happening. A review of City Bonding's quarterly report [Pl. Ex. 1] reveals they have written bonds in amounts ranging from $250 to $150,000, with most bonds being less than $10,000. City & County Bail Bonding's semi-annual report shows

25

they have written bonds ranging from $500 to $10,000. [Pl. Ex. 12.] Common sense suggests that the sober, educated bond purchaser or the purchaser of more expensive bonds may use more care in selecting a bonding company than a customer who is intoxicated, illiterate, or purchasing a relatively inexpensive bond. On balance, the Court finds that this factor weighs very slightly in favor of the plaintiff, but does not, on the whole, greatly increase the likelihood of confusion.

G.     The Defendants' Intent in Selecting the Mark

"Proving intent is not necessary to demonstrate likelihood of confusion, but 'the presence of that factor strengthens the likelihood of confusion.'" *AutoZone, Inc.*, 373 F.3d at 799 (quoting *Wynn Oil Co. v. American Way Serv. Corp.*, 943 F.2d 595, 602 (6th Cir. 1991)). "If a party chooses a mark with the intent of causing confusion, that fact alone may be sufficient to justify an inference of confusing similarity." *AutoZone, Inc.*, 373 F.3d at 799; *Homeowners Group*, 931 F.2d at 1111. Intent is relevant because purposeful copying indicates that the defendant, who has at least as much knowledge as the trier of fact regarding the likelihood of confusion, believes that his copying may divert some business from the senior user. *Daddy's Junky Music Stores, Inc.*, 109 F.3d at 286. Circumstantial evidence of copying, particularly the use of a contested mark with knowledge of the protected mark at issue, is sufficient to support an inference of intentional infringement where direct evidence is not available. *AutoZone, Inc.*, 373 F.3d at 799.

There is no direct evidence that defendants selected their business name with the intent to copy or cause confusion with the City Bonding Company trade name. In fact, Mrs.

Hauther testified that it never entered her mind. [Doc. 36 at p. 152.] However, it is undisputed that the defendants were aware of the City Bonding name in the bail bonding business at the time they started their business. The Court finds the defendants' testimony that they never considered the similarity between the parties' trade names to be lacking credibility, particularly in light of Mr. Hauther's testimony that the only other business name they considered was "Cricket." [Doc. 36 at p. 193.]

The plaintiff also points to the evidence that defendants changed their name to add "Bail" after receipt of the notice letter from plaintiff's counsel. The defendants testified that this was simply to correct an inadvertent omission. While the sequence of events may be suspect, the Court does not discredit the Hauthers' explanation on this point.

On balance, the Court finds that this factor weighs in favor of the plaintiff and increases the likelihood of confusion.

### H.    The Likelihood of Expansion of the Product Lines

"[A] strong possibility that either party will expand his business to compete with the other or be marketed to the same consumers will weigh in favor of finding that the present use is infringing." *Daddy's Junky Music Stores, Inc.*, 109 F.3d at 287. A geographic expansion or an increase in the types of products or services offered can be relevant. *Id*.

At the present time, the parties compete with each other in many of the same counties in Tennessee, with defendants doing business in 14 counties and plaintiff doing business in 38. Thus, it appears that defendants compete with plaintiff in a subset of the counties in which plaintiff operates. The defendants did not expressly state that they intend to expand

the geographic area in which they do business, although it appears they have done so since starting their business. On the present record, the Court cannot conclude that there is sufficient evidence to draw such a conclusion and therefore finds that this factor neither increases or reduces the likelihood of consumer confusion.

I.    Synthesis of Factors

As set forth above, most of the factors weigh in favor of the plaintiff, even if only slightly. It is undisputed that the parties offer the same services to the same pool of customers within the same geographic area. It is also undisputed that the parties use similar marketing channels to reach the same customers. The plaintiff has also presented evidence regarding the relative strength of the "City Bonding Company" and "City" marks in light of the company's history and reputation. The marks are similar, with both names beginning with "City" and ending with "Bonding Company." The defendants acknowledge that they were aware of the "City" and "City Bonding Company" trade name and reputation at the time they chose their business name. The plaintiff has also presented some credible evidence of actual confusion based on the similar trade names. When all of these factors are considered and weighed, the Court concludes that there defendants' use of the trade name "City & County Bail Bonding" does indeed create a likelihood of confusion with the plaintiff's trade name and that consumers are likely to believe that the services offered by the parties are affiliated in some way. *See AutoZone, Inc.*, 373 F.3d at 793; *Homeowners Group, Inc.*, 931 F.2d at 1107. Indeed, as Mr. Foister testified, "you would think [the parties] were ... partners, maybe." [Doc. 36 at 38.]

The plaintiff has also presented evidence that defendants, particularly Mr. Hauther, have led other to believe that they are associated with City Bonding, or at least have not affirmatively clarified that they are not associated with City Bonding. Although the defendants have denied this allegation, the Court finds that there can be no reason for defendants to suggest or refuse to clarify that they do not represent City Bonding.

On balance, the Court finds that plaintiff has presented solid evidence of irreparable harm and a likelihood of success on the merits as to these issues. Therefore, the Court finds that plaintiff's motion for preliminary injunction should be granted.

## III. Conclusion

For the reasons set forth above, the plaintiff's motion for preliminary injunction [Doc. 5] will be **GRANTED**. An appropriate order setting forth the terms of the injunction shall be entered accordingly.

s/ Thomas A. Varlan
UNITED STATES DISTRICT JUDGE

29